# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

SHARON WATTS, TARA LUCENTE,
MICHELE ATKINSON, JAMIE A. CULOSO,
CATHERINE ANDES, and JANET VIOLA,

            Plaintiffs,

-against-

THE COUNTY OF SUFFOLK,
SUFFOLK COUNTY SHERIFF'S
DEPARTMENT, OFFICER JOSEPH FOTI,
OFFICER JOHN SANTACROCE (A/K/A
OFFICER "SANTA CRUZ"), EACH BEING
SUED INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITY,

            Defendants.

-----------------------------------------------------------X

Index No. 13 Civ. 1691 (AMD) (AKT)

**FIRST AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiffs Sharon Watts, Tara Lucente, Michele Atkinson, Jamie A. Culoso, Catherine Andes and Janet Viola, by their counsel, Outten & Golden LLP and the Law Offices of Laura A. Solinger, Esq., hereby complain as follows:

## NATURE OF ACTION

1. Plaintiffs are all former pre-trial detainees at the Suffolk County Correctional Facility at Riverhead, New York (the "Riverhead Jail" or "Riverhead") who were subjected to sexual assault, sexual harassment, and sexually degrading treatment by Defendant Correctional Officer Joseph Foti. When Plaintiffs complained about Officer Foti's sexual harassment, they were punished with threats and worse custodial treatment. Plaintiffs seek: (i) injunctive relief to prevent the Defendants' continuing deprivation of female inmates' constitutional and statutory rights; (ii) a declaratory judgment that the policies, procedures and practices of Suffolk County

and the Suffolk County Sheriff's Department have and continue to deprive female inmates of equal privileges and opportunities, and subject women to a pervasive risk of custodial misconduct, including sexual harassment, sexual assault, sexually degrading treatment, and touching by correctional officers such as Officer Foti, and constitute a violation of Plaintiffs' rights as secured by the Constitution and law of the United States; and (iii) a monetary award to Plaintiffs to compensate for their injuries together with punitive damages, costs and attorneys' fees.

## PARTIES

2.     Plaintiff Sharon Watts was incarcerated as a pre-trial detainee at the Suffolk County Correctional Facility at Riverhead, New York, from April 2009 until June 2010.  She currently lives on Long Island, New York.

3.     Plaintiff Tara Lucente was incarcerated as a pre-trial detainee at the Suffolk County Correctional Facility at Riverhead, New York, from April 2009 until July 2010.  She currently lives on Long Island, New York.

4.     Plaintiff Michele Atkinson was incarcerated as a pre-trial detainee at the Suffolk County Correctional Facility at Riverhead, New York, from November 2009 until August 30, 2010.  She currently lives on Long Island, New York.

5.     Plaintiff Catherine Andes was incarcerated as a pre-trial detainee at the Suffolk County Correctional Facility at Riverhead, New York, from February 2010 until April 2011.  She currently lives on Long Island, New York.

6.     Plaintiff Jamie A. Culoso was incarcerated as a pre-trial detainee at the Suffolk County Correctional Facility at Riverhead, New York, from August 2009 until August 2010.  Her home residence is on Long Island, New York.

7. Plaintiff Janet Viola was incarcerated as a pre-trial detainee at the Suffolk County Correctional Facility at Riverhead, New York, from January 2010 to May 2010. She currently lives in Queens, New York.

8. At all times relevant to this Complaint, Defendant Joseph Foti was employed as a correctional officer at the Suffolk County Correctional Facility at Riverhead, New York, and assigned to work with female prisoners.

9. At all times relevant to this Complaint, Defendant John Santacroce, also known as Officer "Santa Cruz," was employed as a correctional officer and acted as the head of security at the Suffolk County Correctional Facility at Riverhead, New York.

10. At all times relevant to this complaint, Defendants Suffolk County and Suffolk County Sheriff's Department owned and maintained the Suffolk County Correctional Facility located in Riverhead, Suffolk County, New York, which employed the individual Defendants. Suffolk County and the Suffolk County Sheriff's Office are public entities as that term is used in 42 U.S.C. § 12131(1). Upon information and belief, Suffolk County and the Suffolk County Sheriff's Department received federal funds for the operation of prison facilities in New York State, including the Riverhead Jail.

11. Each of the Defendants is sued individually and in their official capacity as Suffolk County employees.

## JURISDICTION

12. This is a civil action brought pursuant to 42 U.S.C. § 1983 *et seq.*, seeking declaratory, injunctive relief and monetary damages against Defendants for purposeful discrimination and violation of the United States Constitution, including the First, Fourth, Eighth and Fourteenth Amendments.

3

13. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

14. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(b) as Plaintiffs were incarcerated at all relevant times in this District.

## **GENERAL ALLEGATIONS**

15. Suffolk County assigned male correction officers – such as Defendants Foti and Santa Cruz – to supervise female prisoners at Riverhead without providing adequate training, oversight, or mechanisms to ensure the safety and protection of female prisoners, including Plaintiffs.

16. At all times relevant to the Complaint, female prisoners at Riverhead, including Plaintiffs, were routinely subjected to offensive sex-based language, sexual harassment, sexual assault, offensive touching, and requests for sexual acts by Defendant Foti.

17. The County Defendants and Defendant Santa Cruz were aware, from reports by women inmates, that Officer Foti had sexually harassed and assaulted female inmates. Despite this knowledge, Defendants failed to take adequate steps to remedy the situation and/or deter such sexual misconduct against female inmates, and these Plaintiffs in particular, including failure to properly train, assign, supervise, investigate, and discipline Officer Foti. Far from remedying the situation, Defendants retaliated against and punished women who complained.

18. Defendants knew or should have known that as a result of their acts and omissions there was a strong likelihood of further sexual misconduct and/or great bodily harm to female inmates, including Plaintiffs, by Officer Foti.

4

19. Defendants' acts and omissions created a hostile environment and pervasive risk of harm to female inmates, including Plaintiffs, and Defendants knew or should have known of the undue threats to Plaintiffs which have resulted from Officer Foti's unlawful acts.

20. The failures, acts, and/or omissions of Defendants, as set forth above, were and are a proximate cause of Plaintiffs' injuries.

21. The deprivation of constitutional rights alleged in this Complaint are the direct result of official policies, custom and practices of Defendants and each of them.

## INDIVIDUAL PLAINTIFFS' ALLEGATIONS

### Sharon Watts

22. Plaintiff Sharon Watts was incarcerated at the Riverhead Jail as a pre-trial detainee from April 2009 until June 2010.

23. While she was incarcerated in Riverhead, Ms. Watts was called from her housing unit to the law library where Officer Foti was working. Officer Foti called Ms. Watts into the Chapel to make a phone call home to her children. As she sat down in the chair next to the telephone to make her call, Officer Foti grabbed Ms. Watts' right hand and pressed it against his crotch area. Ms. Watts tried to pull away from Officer Foti but he held her hand tight and with his other hand unzipped his pants and pulled out his penis and wrapped Ms. Watts' hand around it and held it there.

24. On another occasion, Officer Foti again permitted Ms. Watts to make a phone call in the Chapel, and as she was talking on the phone, unzipped his pants, took out his penis, and touched it to the side of her face.

25. The third time Officer Foti attacked Ms. Watts in the Chapel, he forced her to perform a "hand job."

5

26. On another occasion in 2010, when he was notarizing a document for Ms. Watts, Officer Foti said, "I want to suck your tits Watts."

27. On another occasion in 2010, Officer Foti "dry-humped" Ms. Watts in the law library.

28. Ms. Watts is aware of several other women inmates who were assaulted using precisely the same modus operandi: Officer Foti would call an inmate down to the Chapel and permit her to make a phone call. In exchange for this benefit, he would ask for sexual favors, or, as happened with Ms. Watts, attempt to force himself on the inmate.

29. Ms. Watts complained about the sexual assault she endured to Officer Santa Cruz, who was head of security at the jail. In response, Officer Santa Cruz told Ms. Watts, "Get used to it, you're in jail." He took no action against Officer Foti. Instead, he retaliated against Ms. Watts by immediately moving her to the fifth floor maximum-security area of the jail for a period of time, where she was on lockdown for most of the day. Only after she promised Officer Santa Cruz that she would "keep her mouth shut" did he move her back to the pods.

30. Beyond these instances, when Officer Foti would see Ms. Watts during her incarceration, he would put his hand up like he was a tiger and say, "Grrrr…" and wink at her. Ms. Watts observed Officer Foti making this same gesture to other women in the jail.

### Tara Lucente

31. Tara Lucente was arrested on May 19, 2009 and was incarcerated at the Riverhead Jail as a pre-trial detainee until July 13, 2010, with the exception of one week in May 2010. When she arrived at Riverhead in 2009, the jail failed to provide Ms. Lucente with its inmate handbook.

6

32. While she was incarcerated at Riverhead, Ms. Lucente was consistently sexually harassed and propositioned by Officer Foti. For instance, soon after Ms. Lucente entered the Jail, Officer Foti noted that he knew that she lived on St. Johnland Road in Kings Park, and asked her whether after her release she would meet him at a 7-11 Store in East Northport and they could go for "coffee or something."

33. In the summer of 2009, there was a religious retreat held at the jail. Officer Foti and Security were in charge of the retreat and there was a list of women who had asked to and who were permitted to attend. When Officer Foti came to the "pods" with the list and saw that Ms. Lucente was on the list, he immediately winked at her.

34. The women were brought out of their cells at about 8:00-8:30 a.m. Ministers came and the women played games, sang, and ate lunch. At some point, all of the women were brought to use the bathroom at the back of the Jail. There were approximately 40 women in line waiting to use the bathrooms. Officer Foti called Ms. Lucente out of line and said she would be using a different bathroom. When other women followed Ms. Lucente, the other officer with Officer Foti, said, "Just Lucente." Officer Foti, however, then permitted another inmate, Sara Leone, to accompany Ms. Lucente with him.

35. Officer Foti brought Ms. Lucente and Ms. Leone all the way around the jail to the visiting section in the front and ordered Ms. Leone to enter the bathroom there by herself. As soon as the door had closed, Officer Foti threw Ms. Lucente into a back visiting room (the "box" visiting room). He pushed her up against a wall, held her by her throat with one hand, put his other hand on her breast and started putting his tongue down her throat. Officer Foti insisted that Ms. Lucente wanted "it," and moved his hand down her pants. Ms. Lucente cried and asked him to stop.

7

36. At some point, Ms. Leone came out of the bathroom and observed Officer Foti's assault. Officer Foti ordered her to go back to the retreat by herself, but she refused and screamed at Defendant Foti to stop what he was doing to Ms. Lucente.

37. Officer Foti then ordered Ms. Lucente go into the bathroom to wash her face so that it would not be so obvious that she had been crying. Foti then warned Ms. Leone and Ms. Lucente that if they said anything about what happened to anyone, "some bad shit would happen."

38. Officer Foti repeatedly told Ms. Lucente as he walked her back to the retreat, "Keep your fucking mouth shut. Keep your fucking mouth shut. Don't say anything. When we get back there, don't say anything to anyone."

39. Ms. Lucente, fearing for her safety, used a pay phone designated for the inmates' use, above which was a sign posted that provided an extension with a voicemail box to report any problems.

40. A few days after Ms. Lucente reported the incident using the pay phone provided, she was called down to Officer Santa Cruz's office. Because she had been told by other inmates that Officer Santa Cruz was the Head of Security, she reported the incident to him. Officer Santa Cruz took no action. To the contrary, he told Ms. Lucente that if she did not keep her mouth shut, she would be "put on the next draft to Rikers Island."

41. In August or September 2009, Ms. Lucente was called back into Officer Santa Cruz's office. He angrily demanded to know why people in were saying that Ms. Lucente was talking about "one of the officers here." When Ms. Lucente reminded Officer Santa Cruz he had refused to accept her complaint about Officer Foti, Officer Santa Cruz reaffirmed that he would not accept her complaint and once again warned Ms. Lucente to "keep [her] mouth shut."

8

42. One or two weeks after Ms. Lucente's second conversation with Officer Santa Cruz, Ms. Lucente was taken from the pods and put up on the fifth floor on "lock down," i.e., in solitary confinement where she was restricted to her cell 23 hours a day and was deprived of all privileges except church and medical visits and a shower once every three days.

43. Defendants had no legitimate purpose for transferring Ms. Lucente to fifth-floor "lock down," but did so to punish Ms. Lucente for trying to report Officer Foti's sexual assault and for discussing it with other inmates.

44. During Ms. Lucente's solitary confinement, Officer Foti visited the floor at least ten times to taunt Ms. Lucente, asking her at one point toward the end of her incarceration on the fifth floor, "Had enough yet?"

45. Officer Foti visited the women's fifth floor unit despite the fact that he was not assigned to that unit, claiming that he was there to check whether any inmates needed a notary. Once on the floor, he would try to catch peeks of women naked and also made demeaning comments to the women.

46. Defendants' retaliatory transfer of Ms. Lucente to solitary confinement, and Officer Foti's taunting, confirmed for Ms. Lucente that Defendants had followed through on their threats to punish her for complaining and attempting to complain about her sexual assault by Officer Foti, and that both officers could harm her further while she was at Riverhead Jail, without consequence.

47. One day after church in approximately January or February 2010, one of the nuns was assisting Ms. Lucente in making a telephone call to Ms. Lucente's son, Anthony. Officer Foti was sitting in the Chapel at the time close to Ms. Lucente and the nun. When the nun turned

9

away to dial Anthony's number, Officer Foti reclined in his chair, grabbed his crotch area and mouthed, "You want it" to Ms. Lucente.

48. Beyond these instances, every time Officer Foti would see Ms. Lucente during her incarceration, he would put his hand up like he was a tiger and say, "Grrrr…" and wink at her. Ms. Lucente also observed Officer Foti making this same gesture to other women in the jail.

### Michele Atkinson and Catherine Andes

49. Michele Atkinson was incarcerated at Riverhead as a pre-trial detainee from November 2009 until August 30, 2010.

50. On one occasion while Ms. Atkinson was incarcerated at Riverhead, Officer Foti was transporting her from her cell onto the elevator. Once on the elevator, Officer Foti pushed Ms. Atkinson against the wall of the elevator and forced her hand onto his crotch area. Ms. Atkinson pushed him off and told him she was a gay woman and to leave her alone.

51. Subsequently, while Ms. Atkinson was once attending a group meeting, Officer Foti called another inmate, Catherine Andes, out of the meeting to join him in an adjoining room.

52. Ms. Atkinson was concerned given what she knew of Officer Foti's conduct in the past. When Ms. Atkinson entered the room where Officer Foti had brought Ms. Andes, he was in the process of attacking Ms. Andes and groping her. When Officer Foti saw Ms. Atkinson, he pushed Ms. Andes to the floor and she and Ms. Atkinson ran from the room.

53. The next day, the women complained about the incident to Officer Santa Cruz. Officer Santa Cruz took no action. In fact, the next time that Ms. Atkinson's partner visited, Officer Santa Cruz had her and Ms. Atkinson frisked for the first time and changed Ms. Atkinson's visits with her partner and young stepchild to "box visits" – *i.e.,* visits behind a glass, for the remainder of her stay at the Riverhead Jail.

10

54. Although Defendants later claimed that the searches were motivated by suspicion of contraband and drugs, they were, in fact, intended to punish Ms. Atkinson for filing a grievance against Officer Foti and otherwise report his sexual assaults. Officer Santa Cruz told Ms. Atkinson after the searches, "I warned you, Atkinson."

### Jamie A. Culoso

55. Jamie Culoso was incarcerated at Riverhead as a pre-trial detainee from June 2009 until sometime in August 2010.

56. While she was at Riverhead, Ms. Culoso was called out of her cell by Officer Foti and told she could make a phone call in the Deacon's office near the Chapel. However, Officer Foti said, "If you want a phone call, I want something in return," making clear she would have to perform a sexual act in exchange for the phone call. Again, Ms. Culoso's experience was similar to those of other women at the jail.

57. On another occasion, Ms. Culoso was called to the Law Library by Officer Foti to "type a letter to her Judge." When Ms. Culoso arrived in the library, she was surprised to see Officer Foti alone in the room sitting on a chair in front of the computer. He had the computer screen open to a photo of Ms. Culoso which he had copied from her Facebook page and enlarged so that it filled the screen. Officer Foti told Ms. Culoso that she "looked sexy" in her photos. She asked him to take them down. He refused. She asked again and again he refused.

58. Ms. Culoso then turned to walk away from him but Officer Foti grabbed her from behind by her waist and started pulling her forcibly onto his crotch area. Ms. Culoso could feel his penis on her backside. She struggled away from him and walked quickly out of the room back to her housing unit.

11

59.     Ms. Culoso was extremely upset by the incident and called her mother, who then called the jail to report the assault.

60.     Again no action was taken against Officer Foti, but like the other women who complained about the sexual assaults, Ms. Culoso was retaliated against.  After her mother had called to complain about Officer Foti, Ms. Culoso was no longer called out of her cell to speak at the YES program, which she had enjoyed doing in the past.  In addition, Officer Foti stopped speaking with her altogether and made her feel uncomfortable.

### Janet Viola

61.     Janet Viola was incarcerated at Riverhead as a pre-trial detainee from mid-January 2010 until May 2010.

62.     At least one month after she arrived at Riverhead, Ms. Viola was called to the Chapel to make a phone call home to her mother.  When she arrived at the Chapel, Officer Foti was there, and directed Ms. Viola to sit down.  After Officer Foti dialed the number requested by Ms Viola, and as she spoke to her mother on the phone, Officer Foti grabbed Ms. Viola's right hand and pressed it against his crotch area.  Ms. Viola pulled her hand away.  Once again, Officer Foti grabbed her hand and placed it on his crotch area.  Ms. Viola became very distraught, ended the phone call with her mother, and left the Chapel.

63.     In March 2010, correctional officers at the Riverhead Jail brutally beat a female inmate, Angela Sutphen.  All of the female inmates incarcerated at the time, including Ms. Viola, immediately heard about the beating that day because Defendants restricted the movement of all the women that day.

64.     The female inmates, including Ms. Viola, later heard that the beating of Ms. Sutphen was brutal.  Ms. Sutphen suffered a broken nose and her two front teeth were knocked

12

out.  Ms. Sutphen had only verbally challenged the authority of the correctional officers. Following her beating, Defendants' employees prevented Ms. Sutphen from seeing or contacting her family.  Ms. Viola and the other women inmates heard this also, instilling fear among them.

65. Approximately three weeks after Ms. Sutphen's beating, Ms. Viola passed her in the hallway and saw, to her shock, Ms. Sutphen with her nose bandaged and two black eyes.

66. The attack on Ms. Sutphen motivated Ms. Viola to contact her family to be bailed out immediately and seek help for Ms. Sutphen.  Sometime in April 2010, Officer Foti again permitted Ms. Viola to make a phone call in the Chapel.  Before allowing Ms. Viola to make the call, however, he first told Ms. Viola to "be nice" and put his hand up like a tiger, saying "Grrrr…."

67. On that occasion, Officer Foti permitted Ms. Viola to make the phone call and after dialing the number, stood next to Ms. Viola.  Officer Foti grabbed Ms. Viola's hand, placed it on his exposed penis, and coerced her into performing a "hand job" on him.

68. Ms. Viola was extremely upset by the incident and felt degraded by the actions of Officer Foti.

69. Approximately one week after Officer Foti sexually assaulted her a second time, Ms. Viola was walking to the church and saw him walking in the opposite direction.  With four or five women walking ahead of her, and thus between her and Officer Foti, he once again put his hand up like a tiger, saying, "Grrrr…" to Ms. Viola, seemingly unconcerned that this act of sexual harassment was in full view of the other women.

70. In approximately April 2010, Ms. Viola encountered Officer Foti once again on her way to a sewing class held in the laundry room of the Jail.  When Ms. Viola saw Officer Foti

13

walking toward her, he smiled. When he was a few feet away from her, Officer Foti made eye contact with Ms. Viola, smirked, and once again put his hand up like a tiger, saying, "Grrrr…."

71. Because she and Officer Foti were alone in the hallway, the sight of him caused Ms. Viola to involuntarily recall at that moment his sexual assault and felt claustrophobic tightness in her chest as he approached.

72. The Riverhead Jail did not have any video security cameras in the spaces where any of the above abuses against the women inmates occurred for the duration of Ms. Viola's confinement. This caused Ms. Viola to be terrified for her physical safety from further attacks or retaliation by any correctional officer throughout her confinement.

73. The sexual assault, harassment, and intimidation Ms. Viola endured caused Ms. Viola significant and continuing emotional distress.

## CONTINUING VIOLATION

74. The discriminatory acts set forth at paragraphs 14 through 73 constitute a continuing violation of Plaintiffs' statutory and constitutional rights.

## FIRST CAUSE OF ACTION
## (VIOLATION OF 42 U.S.C. § 1983)

75. Plaintiffs restate the allegations set forth at paragraphs 1 through 74.

76. Defendants' failure to prevent and remedy the sexual assaults, harassment, and degrading treatment by Officer Foti upon Plaintiffs and other women, constitutes an official policy, custom, pattern or practice that has deprived Plaintiffs of their constitutional right to bodily integrity and right of privacy without due process of law in violation of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.\

77. The deprivation of constitutional rights alleged in this Complaint is the direct result of official policy, custom and practices of Defendants.

## SECOND CAUSE OF ACTION
## (CRUEL AND UNUSUAL PUNISHMENT)

78. Plaintiffs restate the allegations set forth at paragraphs 1 through 74.

79. The above-described acts of Defendants constitute the unnecessary and wanton infliction of pain and suffering and emotional distress in the Plaintiffs, without penological justification.

80. Defendants' failure to prevent and remedy the sexual abuse, harassment, degrading treatment and retaliatory acts which Plaintiffs have been subjected constitutes deliberate indifference to the Plaintiffs' medical, psychological, and emotional needs and amounts to cruel and unusual punishment under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION
## (EQUAL PROTECTION)

81. Plaintiffs restate the allegations set forth at paragraphs 1 through 74.

82. Defendants' failure to prevent and remedy the sexual abuse, harassment, degrading treatment, retaliation and violations of Plaintiffs' privacy violates Plaintiffs' rights to equal protection under the law under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983.

83. Defendants' failure to remedy sexual attacks and sexual harassment of women prisoners and ratification of the hostile conditions and treatment for women inmates constitutes discrimination based on sex. This inferior treatment is not substantially related to an important and legitimate governmental interest and violates Plaintiffs' rights to equal protection under the law and 42 U.S.C. § 1983.

84. The denial of Plaintiffs, and other female inmates, of the right to equal opportunity for rehabilitation and the subjection of the Plaintiffs and other women, to a hostile prison environment constitutes prohibited discrimination based on their sex in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

85. At all times relevant to this action, Defendants were acting under color of law and, in doing so, deprived Plaintiffs and other female inmates of equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for a judgment against the Defendants and each of them and request that this Court:

a. Issue a declaratory judgment that the policies, practices, acts and omissions complained of herein violate Plaintiffs' constitutional rights guaranteed by the specified sections of the United States Constitution and statutory law;

b. Order corrective action to remedy Defendants' unlawful policies, practices, acts and omissions and to deter future violations;

c. Award compensatory damages to Plaintiffs for injuries incurred;

d. Award punitive and exemplary damages;

e. Award Plaintiffs' attorneys fees and costs; and

f. Award such other and further relief as seems just and proper.

## DEMAND FOR TRIAL BY JURY

NOW COME Plaintiffs, by and through their counsel, and hereby demand a trial by jury as to all those issues so triable as of right.

| | | |
|---|---|---|
| Dated: | January 19, 2016<br>New York, New York | Respectfully submitted,<br><br>**OUTTEN & GOLDEN LLP**<br>By:<br><br> */s/ Darnley D. Stewart* <br>Darnley D. Stewart<br><br>Darnley D. Stewart<br>Shirley Lin<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br>Telephone: (212) 245-1000<br><br>**LAW OFFICES OF**<br>**LAURA A. SOLINGER, ESQ.**<br>Laura A. Solinger, Esq.<br>51020 Main Road<br>Southold, New York 11971<br>Telephone: (631) 655-4000<br><br>*Attorneys for Plaintiffs* |